**Monica R. Kelly** (Illinois Bar ID 6225920)
monicakelly@ribbecklaw.com
manuelribbeck@ribbecklaw.com
mervinmateo@ribbecklaw.com
fernandotorres@ribbecklaw.com
**RIBBECK LAW CHARTERED**
505 N. Lake Shore Drive, Suite 102
Chicago, Illinois 60611
Telephone: 1 312 822 9999

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICTOF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **VERONICA CEJA** and **DANIEL GARZA II**, Individually and on Behalf of All Others Similarly Situated, | ) | |
| **Plaintiffs**, | ) | **CLASS ACTION** |
| vs. | ) | **Case No.:** |
| **XANODYNE PHARMACEUTICALS, INC.**, a Kentucky Corporation, | ) | **CLASS ACTION COMPLAINT** |
| Defendant. | ) | **DEMAND FOR JURY TRIAL** |

**NOW COME** the Plaintiffs, **VERONICA CEJA** and **DANIEL GARZA II** (hereinafter "Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, **RIBBECK LAW CHARTERED**, and complaining of the Defendant, **Xanodyne Pharmaceuticals, Inc.** (hereinafter "Defendant"), a Kentucky corporation, states as follows:

## NATURE OF THE CASE

1. This class action is brought by Plaintiffs, individually and on behalf of putative statewide classes in Illinois and other States, as well as a putative nationwide class of similarly

situated individuals located throughout the country (hereinafter "the Class"), who were prescribed, purchased and correctly used DARVOCET, also known generically as Propoxyphene Napsylate and Acetaminophen.

2. Defendant designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed DARVOCET for use as a prescription pain management medication.

3. Defendant concealed its knowledge of DARVOCET's defects, from Plaintiffs and the Class, the Food and Drug Administration (hereinafter the "FDA"), the public in general and/or the medical community specifically.

4. When warning of safety and risks of DARVOCET, Defendant negligently and/or fraudulently represented to the medical and healthcare community, the FDA, to Plaintiffs and the Class, the public in general, that DARVOCET had been tested and was found to be safe and/or effective for its indicated use.

5. These representations were made by Defendant with the intent of defrauding and deceiving Plaintiffs and the Class, the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing the public in general, and the medical community in particular, to recommend, dispense and/or purchase DARVOCET for use as a prescription pain management medication, all of which evinced a callous, reckless, willful, depraved indifference to health, safety and welfare of the Plaintiffs and the Class herein.

6. Defendant negligently and improperly failed to perform sufficient tests, if any, concerning DARVOCET's potential to cause cardiotoxicity and, more specifically, potentially fatal cardiac arrhythmias, during clinical trials, forcing Plaintiffs and the Class, and their physicians, hospitals, and/or the FDA, to rely on safety information that applies to other prescription pain management medications, which does not entirely and/or necessarily apply to the DARVOCET whatsoever.

7. As a result of the defective nature of DARVOCET, those persons who use and/or used and relied on DARVOCET have suffered and/or are at a greatly increased risk of serious and dangerous side effects including, *inter alia*, heart arrhythmias, myocardial infarction, other adverse cardiovascular events and/or sudden death, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

8. Plaintiffs and the Class herein have sustained certain of the above health consequences due to their use of DARVOCET.

9. Defendant concealed its knowledge of the defects in its product from the Plaintiffs and the Class, and their physicians, hospitals, pharmacists, the FDA, and the public in general.

10. Consequently, Plaintiffs and the Class seek compensatory damages as a result of their use of DARVOCET, which has caused, may cause, and/or will continue to cause Plaintiffs and the Class to suffer and/or be at greatly increased risk of serious and dangerous side effects including, *inter alia*, heart arrhythmias, myocardial infarction, other adverse cardiovascular events and/or sudden death, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

## THE PARTIES

11. Plaintiff, **VERONICA CEJA**, is a natural person who, at all times relevant to the Complaint, resides in Chicago, Illinois and is thus a citizen of Illinois.

12. Sometime in February 2010, Plaintiff **VERONICA CEJA** was prescribed DARVOCET for pain management.

13. As result of using Defendant's drug DARVOCET, Plaintiff **VERONICA CEJA** suffered chest pains, experienced vertigo, dizziness, nausea and vomiting, and had severe headaches and problems breathing in or about February 2010.

14. Plaintiff **VERONICA CEJA** used DARVOCET in the manner in which it was prescribed to her at or about the time she suffered the above-mentioned conditions in or about February 2010.

15. Plaintiff **VERONICA CEJA** was caused to sustain severe and permanent personal injuries, pain, suffering and emotional distress.

16. The injuries and damages sustained by Plaintiff **VERONICA CEJA** were caused by Defendant's drug DARVOCET.

17. Plaintiff, **DANIEL GARZA II**, is a natural person who, at all times relevant to the Complaint, resides in Chicago, Illinois and is thus a citizen of Illinois.

18. Sometime in 2006, Plaintiff **DANIEL GARZA II** was prescribed DARVOCET for pain management.

19. As result of using Defendant's drug DARVOCET, Plaintiff **DANIEL GARZA II** suffered chest pains, experienced vertigo, dizziness, nausea and vomiting in or about 2006.

20. Plaintiff **DANIEL GARZA II** used DARVOCET in the manner in which it was prescribed to him at or about the time he suffered the above-mentioned conditions in or about 2006.

21. Plaintiff **DANIEL GARZA II** was caused to sustain severe and/or permanent personal injuries, pain, suffering and emotional distress.

22. The injuries and damages sustained by Plaintiff **DANIEL GARZA II** were caused by Defendant's drug DARVOCET.

23. Upon information and belief, Defendant **Xanodyne Pharmaceuticals, Inc.** at all relevant times was and is a corporation organized under the laws of the State of Kentucky, with its principal place of business located in the State of Kentucky.

24. Upon information and belief, at all relevant times Defendant has transacted and conducted business in the State of Illinois and derived substantial revenue from interstate commerce.

25. Upon information and belief, Defendant expected or should have expected that its acts would have consequences within the United States of America, and Chicago, Illinois, and within the confines of the Northern District of Illinois in particular and derived substantial revenue from interstate commerce.

26. Upon information and belief and at all relevant times, Defendant was in the business of and did design, research, manufacture, test, advertise, promote, market, sell and distribute DARVOCET for use as a prescription management medication.

27. Upon information and belief, Defendant is the holder of an approved New Drug Application for DARVOCET.

## JURISDICTION AND VENUE

28. This Court has subject matter jurisdiction over this action pursuant to, 28 U.S.C. § 1332(d)(2) of the Class Action Fairness Act of 2005 ("CAFA"), because Plaintiffs bring this action as a class action under Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs **VERONICA CEJA** and **DANIEL GARZA II** are citizens of a different state than the

Defendant, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

29. This Court has personal jurisdiction over Plaintiffs because Plaintiffs submit to the Court's jurisdiction. This Court has personal jurisdiction over the Defendant because it conducts substantial business in the State of Illinois, have sufficient minimum contacts with the State, and otherwise avail itself of the markets in this State, through promotion, sale, marketing, and distribution of its product in this State, so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

30. Venue properly lies in this district because Defendant, as a corporation, is "deemed to reside in any judicial district in which [defendant is] subject to personal jurisdiction;" because a substantial part of the acts or omissions giving rise to Plaintiffs' claims occurred and/or emanated in this district; and because Defendant conducts substantial business in this judicial district.

## **FACTUAL BACKGROUND**

31. At all relevant times, Defendant was and remains in the business of and did design, research, manufacture, test, advertise, promote, market, sell and distribute DARVOCET for use as a prescription pain management medication.

32. At all times relevant, Defendant focused its sales on pain management products, including DARVOCET, because the area of pain management offers attractive commercial opportunities in significant markets in the United States.

33. At all times relevant, Defendant affirmatively decided not to take part in full discovery research of its products because defendant believed that it was more beneficial for it to advance products quickly through abbreviated developmental pathways in order to decrease the time and cost of bringing a new drug to market.

34. By using a strategy of moving its products through the research and development process expeditiously, Defendant believes it can reach its goal of becoming a leading integrated specialty pharmaceutical company that develops and commercializes new products for significant markets in pain management.

35. According to the FDA, about 10 million people in the U.S. received prescriptions for DARVOCET and Propoxyphene related drugs in 2009.

36. Upon information and belief, Adverse Event data maintained by the FDA indicates staggering, serious Adverse Events, including, heart arrhythmias, atrial fibrillation, tachycardia, bradycardia, myocardial infarction, and/or sudden death.

37. Defendant ignored the correlation between the use of DARVOCET and the increased risk of developing potentially fatal heart arrhythmias, despite the wealth of scientific and medical evidence available.

38. In June 2009, the European Medicines Agency (EMEA) recommended that the marketing authorizations for Propoxyphene be withdrawn across the European Union for safety concerns.

39. Despite being petitioned by public interest groups to investigate whether DARVOCET was linked to serious and potentially fatal heart arrhythmias, Defendant refused to do so until July 2009, when it was ordered by the FDA to conduct a safety study assessing unanswered questions about the effects of DARVOCET on the heart.

40. The results of the study ordered by the FDA indicated that even when taken at recommended doses, Propoxyphene causes significant changes to the electrical activity of the heart. These changes, which can be seen on an electrocardiogram (ECG), can increase the risk for serious abnormal heart rhythms that have been linked to serious adverse effects, including sudden death.

41. On November 19, 2010, the FDA announced that Defendant had agreed to halt all U.S. Marketing of DARVOCET after it was determined that the drugs benefits were outweighed by the risks associated with its use.

42. The use of DARVOCET creates unique and dangerous risks compared to other prescription pain management medications. These risks include, *inter alia*, heart arrhythmias, myocardial infarction, and other adverse cardiovascular events, including sudden death.

43. The Defendant did not provide adequate warnings to doctors, the health care community and the general public about the increased risk of serious adverse events that are described herein and that have been repeated by the medical community.

44. By reason of the foregoing, Plaintiffs and the Class are at extremely high risk of serious and dangerous side effects including, *inter alia*, heart arrhythmias, myocardial infarction, other adverse cardiovascular events and/or sudden death, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, and fear of developing any of the above named health consequences.

45. Plaintiffs and the Class continue to suffer from the mental anguish and psychological trauma of living with the knowledge that they have and/or may suffer serious and dangerous side effects including, *inter alia*, heart arrhythmias, myocardial infarction, other adverse cardiovascular events and/or sudden death, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, and fear of developing any of the above named health consequences.

46. By reason of the foregoing, Plaintiffs and the Class have suffered and/or continue to suffer injury as a result of their use of Defendant's drug DARVOCET.

## FEDERAL REQUIREMENTS

47. Defendant had an obligation to comply with the law in the manufacture, design, and sale of DARVOCET.

48. Upon information and belief, Defendant violated the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §301, *et seq.*

49. With respect to the prescription drug DARVOCET, the Defendant, upon information and belief, has or may have failed to comply with all federal standards applicable to the sale of prescription drugs including, but not limited to, one or more of the following violations:

a. The prescription drug DARVOCET is adulterated pursuant to 21 U.S.C. § 351 because, among other things, it fails to meet established performance standards, and/or the methods, facilities, or controls used for its manufacture, packing, storage or installation is not in conformity with federal requirements. *See* 21 U.S.C. § 351.

b. The prescription drug DARVOCET is adulterated pursuant to 21 U.S.C. § 351 because, among other things, its strength differs from or its quality or purity falls below the standard set forth in the official compendium for DARVOCET and such deviations are not plainly stated on their labels.

c. The prescription drug DARVOCET is misbranded pursuant to 21 U.S.C. §352 because, among other things, its labeling is false or misleading.

d. The prescription drug DARVOCET is misbranded pursuant to 21 U.S.C. §352 because words, statements, or other information required by or under authority of chapter 21 U.S.C. § 352 are not prominently placed thereon with such conspicuousness and in such terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use.

e. The prescription drug DARVOCET is misbranded pursuant to 21 U.S.C. §352 because the labeling does not bear adequate directions for use, and/or the labeling does not bear adequate warnings against use where its use may be dangerous to health or against unsafe dosage or methods or duration of administration or application, in such manner and form as are necessary for the protection of users.

f. The prescription drug DARVOCET is misbranded pursuant to 21 U.S.C. §352 because it's dangerous to health when used in the dosage or manner, or with the frequency or duration prescribed, recommended, or suggested in the labeling thereof.

g. The prescription drug DARVOCET does not contain adequate directions for use pursuant to 21 CFR § 201.5, because, among other reasons, of omission, in whole or in part, or incorrect specification of (a) statements of all conditions, purposes, or uses for which it is intended, including conditions, purposes, or uses for which it is prescribed, recommended or suggested in their oral, written, printed, or graphic advertising, and conditions, purposes, or uses for which the drugs are commonly used, (b) quantity of dose, including usual quantities for each of the uses for which it is intended and usual quantities for persons of different ages and different physical conditions, (c) frequency of administration or application, (d) duration of administration or application, and/or (d) route or method of administration or application.

h. The Defendant violated 21 CFR § 201.56 because the labeling was not informative and accurate.

i. The prescription drug DARVOCET is misbranded pursuant to 21 CFR § 201.56 because the labeling was not updated as new information became available that caused the labeling to become inaccurate, false, or misleading.

j. The Defendant violated 21 CFR § 201.57 by failing to provide information that is important to the safe and effective use of the drug including the potential of DARVOCET to cause the need for regular and/or consistent cardiac monitoring to ensure that a potential fatal cardiac arrhythmia has not developed.

k. The Defendant violated 21 CFR § 201.57 because they failed to identify specific tests needed for selection or monitoring of patients who took the prescription drug DARVOCET.

l. The Defendant violated 21 CFR § 201.57 because the safety considerations regarding the prescription drug DARVOCET are such that the drug should be reserved for certain situations, and the Defendant failed to state such information.

m. The prescription drug DARVOCET is mislabeled pursuant to 21 CFR § 201.57 because the labeling fails to describe serious adverse reactions and potential safety hazards, limitations in use imposed by it, and steps that should be taken if they occur.

n. The prescription drug DARVOCET is mislabeled pursuant to 21 CFR § 201.57 because the labeling was not revised to include a warning as soon as there was reasonable evidence of an association of a serious hazard with the drug.

o. The Defendant violated 21 CFR § 201.57 because the labeling failed to list the adverse reactions that occur with the prescription drug DARVOCET and other drugs in the same pharmacologically active and chemically related class.

p. The Defendant violated 21 CFR § 201.57 because the possibility that a patient could develop cardiac arrhythmia are significantly more severe than the other reactions listed in the adverse reactions, and yet the Defendant failed to list the development of cardiac arrhythmia before the other adverse reactions on the labeling of the prescription drug DARVOCET.

q. The prescription drug DARVOCET is mislabeled pursuant to 21 CFR § 201.57 because the labeling does not state the recommended usual dose, the usual dosage range, and, if appropriate, an upper limit beyond which safety and effectiveness have not been established.

r. The prescription drug DARVOCET violates 21 CFR § 210.1 because the process by which it was manufactured, processed, and/or held fails to meet the minimum current good manufacturing practice of methods to be used in, and the facilities and controls to be used for, the manufacture, packing, or holding of a drug to assure that it meets the requirements as to safety and have the identity and strength and meets the quality and purity characteristic that they purport or are represented to possess.

s. The prescription drug DARVOCET violates 21 CFR § 210.122 because the labeling and packaging materials do not meet the appropriate specifications.

t. The prescription drug DARVOCET violates 21 CFR § 211.165 because the test methods employed by the Defendant are not accurate, sensitive, specific, and/or reproducible and/or such accuracy, sensitivity, specificity, and/or reproducibility of test methods have not been properly established and documented.

u. The prescription drug DARVOCET violates 21 CFR § 211.165 in that the prescription drug DARVOCET fails to meet established standards or specifications and any other relevant quality control criteria.

v. The prescription drug DARVOCET violates 21 CFR § 211.198 because the written procedures describing the handling of all written and oral complaints regarding the prescription drug DARVOCET were not followed

w. The prescription drug DARVOCET violates 21 CFR § 310.303 in that the prescription drug DARVOCET is not safe and effective for its intended use.

x. The Defendant violated 21 CFR § 310.303 because the Defendant failed to establish and maintain records and make reports related to clinical experience or other data or information necessary to make or facilitate a determination of whether there are or may be grounds for suspending or withdrawing approval of the application to the FDA.

y. The Defendant violated 21 CFR §§310.305 and 314.80 by failing to report adverse events associated with the prescription drug DARVOCET as soon as possible or at least within 15 days of the initial receipt by the Defendant of the adverse drugs experience.

z. The Defendant violated 21 CFR §§310.305 and 314.80 by failing to conduct an investigation of each adverse event associated with the prescription drug DARVOCET, and evaluating the cause of the adverse event.

aa. The Defendant violated 21 CFR §§ 310.305 and 314.80 by failing to promptly investigate all serious, unexpected adverse drug experiences and submit follow-up reports within the prescribed 15 calendar days of receipt of new information or as requested by the FDA.

bb. The Defendant violated 21 CFR §§ 310.305 and 314.80 by failing to keep records of the unsuccessful steps taken to seek additional information regarding serious, unexpected adverse drug experiences.

cc. The Defendant violated 21 CFR §§ 310.305 and 314.80 by failing to identify the reports they submitted properly, such as by labeling them as "15-day Alert report," or "15-day Alert report follow up."

dd. The Defendant violated 21 CFR § 312.32 because they failed to review all information relevant to the safety of the prescription drug DARVOCET or otherwise received by the Defendant from sources, foreign or domestic, including information derived from any clinical or epidemiological investigations, animal investigations, commercial marketing experience, reports in the scientific literature, and unpublished scientific papers, as well as reports from foreign regulatory authorities that have not already been previously reported to the agency by the sponsor.

ee. The Defendants violated 21 CFR § 314.80 by failing to provide periodic reports to the FDA containing (a) a narrative summary and analysis of the information in the report and an analysis of the 15-day Alert reports submitted during the reporting interval, (b) an Adverse Reaction Report for each adverse drug experience not already reported under the post marketing 15-day Alert report, and/or (c) a history of actions taken since the last report because of adverse drug experiences (for example, labeling changes or studies initiated).

ff. The Defendant violated 21 CFR § 314.80 by failing to submit a copy of the published article from scientific or medical journals along with one or more 15-day Alert reports based on information from the scientific literature.

50. Defendant failed to meet the standard of care set by the above statutes and regulations, which were intended for the benefit of individual consumers such as the Plaintiff and the Class, making the Defendant negligent *per se*.

## **CLASS ACTION ALLEGATIONS**

51. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of themselves and a Class consisting of:

> All individuals in Illinois and the United States, including its territories, who purchased, paid for and/or used DARVOCET. For purposes of the Class definition, individuals "purchased" these drugs if they paid all or part of the purchase price.

52. Specifically excluded from the Class are the Defendant, any entities in which Defendant has a controlling interest, and the officers, directors, affiliates, legal representatives, successors, subsidiaries and/or assigns of the Defendant and any Judge assigned to this action, and her or his immediate family. Plaintiff reserves the right to modify the Class definition as discovery and/or further investigation so warrant.

53. This action has been brought and may properly be maintained as a class action as Plaintiffs and the Class satisfy all requirements for maintaining a class action.

54. The number of members in the Class is so numerous as to render joinder impracticable. Plaintiffs are unable to provide an approximation of the number of potential Class members, but note that the dollar sales amount of the Defendant's DARVON was in the hundreds of millions of dollars. The disposition of the claims of the Class members in a single class action will provide substantial benefits to all parties and to the Court.

55. There are questions of law and fact common to the Class which predominate over any questions affecting only individual members. The questions of law and fact common to the Class arising from Defendant's actions include, without limitation, the following:

(a) Whether Defendant was negligent in designing, researching, manufacturing, marketing, supplying, promoting, packaging, sale and/or distribution of DARVOCET;

(b) Whether Defendant is strictly liable for the injuries sustained by the Plaintiffs and the Class for having designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed DARVOCET which created an unreasonable risk to the health of the Plaintiffs and the Class;

(c) Whether Defendant’s conduct constituted a breach of its express warranties;

(d) Whether Defendant's conduct constituted a breach of any implied warranties;

(e) whether the Defendant's conduct, as set forth in Plaintiffs' Class Action Complaint, constitutes fraud, deceit and misrepresentation;

(f) Whether Plaintiffs and members of the Class have all suffered injury in fact or otherwise been damaged as a result of Defendant’s concealment and omissions about the safety of DARVOCET;

(g) Whether Plaintiffs and members of the Class have suffered injury in fact or otherwise been damaged as a result of Defendant's conduct;

(h) Whether the Defendant has been unjustly enriched by its conduct; and

(i) Whether the Plaintiffs and the Class members are entitled to punitive or exemplary damages and, if so, the nature of such damages.

56. Plaintiffs' claims are typical of the claims of the proposed Class, and Plaintiffs will fairly and adequately represent and protect the interests of the proposed Class. Plaintiffs do not have any interests antagonistic to those of the Class. Plaintiffs have retained competent counsel experienced in the prosecution of this type of litigation. The questions of law and fact common to the Class members, some of which are set out above, predominate over any questions affecting only individual Class members.

57. Defendant has acted on grounds generally applicable to all Class members, thereby making final equitable relief with respect to the Class as a whole appropriate with respect to the Defendant.

58. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because the expense and burden of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them. Individualized litigation would present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all of the parties and to the court system because of multiple trials of the same factual and legal issues. Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

59. The determination of fault and the basis for assessment of compensatory, exemplary and punitive damages may be made in the class action without the necessity of proof at that time as to the amount of those damages, thereby establishing guidelines for settlement and/or subsequent trials in individual cases if necessary.

60. Any applicable statutes of limitations have been tolled by the Defendant's knowing and active concealment and denial of the facts as alleged herein. Plaintiffs and members of the Class have been kept in ignorance of vital information essential to the pursuit of these claims, without any fault or lack of diligence on their part. Plaintiffs and members of the Class could not reasonably have discovered the unreasonably dangerous side effects of the DARVON drugs they purchased and/or consumed.

## COUNT I
## NEGLIGENCE

61. Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in the preceding paragraphs of this Complaint.

62. Plaintiffs bring this claim on behalf of themselves and all other persons who purchased, paid for and/or used DARVOCET.

63. Defendant had a duty to exercise reasonable care in the designing, researching, manufacturing, marketing, supplying, promoting, packaging, sale and/or distribution of DARVOCET into the stream of commerce, including a duty to assure that the product would not cause users to suffer unreasonable, dangerous side effects.

64. Defendant failed to exercise ordinary care in the designing, researching, manufacturing, marketing, supplying, promoting, packaging, sale, testing, quality assurance, quality control, and/or distribution of DARVOCET into interstate commerce in that Defendant knew or should have known that using DARVOCET created a high risk of unreasonable,

dangerous side effects, including *inter alia* heart arrhythmias, myocardial infarction, other adverse cardiovascular events and/or sudden death, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

65. The negligence of the Defendant, their agents, servants, and/or employees, included but was not limited to the following acts and/or omissions:

a. Manufacturing, producing, promoting, formulating, creating, and/or designing DARVOCET without thoroughly testing it;

b. Manufacturing, producing, promoting, formulating, creating, and/or designing DARVOCET without adequately testing it;

c. Not conducting sufficient testing programs to determine whether or not DARVOCET was safe for use, in that Defendant herein knew or should have known that DARVOCET was unsafe and unfit for use by reason of the dangers to its users;

d. Selling DARVOCET without making proper and sufficient tests to determine the dangers to its users;

e. Negligently failing to adequately and correctly warn the Plaintiffs and the Class, the public, the medical and healthcare profession, and the FDA of the dangers of DARVOCET;

f. Failing to provide adequate instructions regarding safety precautions to be observed by users, handlers, and persons who would reasonably and foreseeably come into contact with, and more particularly, use, DARVOCET;

g. Failing to test DARVOCET and/or failing to adequately, sufficiently and properly test DARVOCET;

h. Negligently advertising and recommending the use of DARVOCET without sufficient knowledge as to its dangerous propensities;

i. Negligently representing that DARVOCET was safe for use for its intended purpose, when, in fact, it was unsafe;

j. Negligently representing that DARVOCET had equivalent safety and efficacy as other prescription pain management medications;

k. Negligently designing, manufacturing, producing and assembling DARVOCET in a manner which was dangerous to its users;

l. Concealing information concerning FDA warnings from the Plaintiffs and the Class in knowing that DARVOCET was unsafe, dangerous, and/or non-conforming with FDA regulations;

m. Improperly concealing and/or misrepresenting information from the Plaintiffs and the Class, healthcare professionals, and/or the FDA, concerning the severity of risks and dangers of DARVOCET compared to other prescription pain management medications.

66. Defendant under-reported, underestimated, and downplayed the serious dangers of DARVOCET.

67. Defendant negligently compared the safety risk and/or dangers of DARVOCET with other prescription pain management medications.

68. Defendant was negligent in the designing, researching, supplying, manufacturing, promoting, packaging, distributing, testing, advertising, warning, marketing and sale of DARVOCET in that it:

a. Failed to use due care in designing and manufacturing DARVOCET so as to avoid the aforementioned risks to individuals when DARVOCET was used for prescription pain management;

b. Failed to accompany their product with proper and/or accurate warnings regarding all possible adverse side effects associated with the use of DARVOCET;

c. Failed to accompany their product with proper warnings regarding all possible adverse side effects concerning the failure and/or malfunction of DARVOCET;

d. Failed to accompany its product with accurate warnings regarding the risks of all possible adverse side effects concerning DARVOCET;

e. Failed to warn Plaintiffs and the Class of the severity and duration of such adverse effects, as the warnings given did not accurately reflect the symptoms, or severity of the side effects;

f. Failed to conduct adequate testing, including pre-clinical and clinical testing and post-marketing surveillance to determine the safety of DARVOCET;

g. Failed to warn Plaintiffs and the Class, prior to actively encouraging the sale of DARVOCET, either directly or indirectly, orally or in writing, about the need for more comprehensive, more regular medical monitoring than usual to ensure early discovery of potentially serious side effects;

h. Were otherwise careless and/or negligent.

69. Despite the fact that Defendant knew or should have known that DARVOCET caused unreasonably dangerous side effects, Defendant continued to market, manufacture, distribute and/or sell DARVOCET to consumers, including the Plaintiffs and the Class.

70. Defendant knew or should have known that consumers such as the Plaintiffs and the Class would foreseeably suffer injury as a result of Defendant's failure to exercise ordinary care, as set forth above.

71. Defendant's negligence was the proximate cause of Plaintiffs' and the Class' injuries, harm and economic loss which they suffered and/or will continue to suffer.

72. As a result of the foregoing acts and omissions, the Plaintiffs and the Class were and/or still are caused to suffer and/or are at a greatly increased risk of serious and dangerous side effects including *inter alia* heart arrhythmias, myocardial infarction, other adverse cardiovascular events and/or sudden death, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

73. As a result of the foregoing negligent acts and omissions of the Defendant, the Plaintiffs and the Class sustained substantial and ascertainable injuries, incidental and related expenses, economic loss, and other damages, in an amount to be determined at trial, which damages were the actual and proximate result of Defendant's breach of its duty of care.

WHEREFORE, Plaintiffs, on behalf of themselves and the members of the Class, respectfully seek the relief set forth below.

**COUNT II**

**STRICT PRODUCTS LIABILITY**

74. Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in the preceding paragraphs of this Complaint.

75. Plaintiffs bring this claim on behalf of themselves and all other persons who purchased, paid for and/or used DARVOCET.

76. At all times herein mentioned, the Defendant designed, researched, manufactured, tested, advertised, promoted, marketed, sold, distributed DARVOCET as hereinabove described that was used by the Plaintiffs and the Class.

77. DARVOCET was expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by the Defendant.

78. At those times, DARVOCET was in an unsafe, defective, and inherently dangerous condition, which was dangerous to users, and the Plaintiffs and the Class herein.

79. The prescription pain management medication, DARVOCET, designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendant was defective in design or formulation in that, when it left the hands of the Defendant manufacturer and/or suppliers, the foreseeable risks exceeded the benefits associated with the design or formulation of DARVOCET.

80. The prescription pain management medication, DARVOCET, designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendant was defective in design and/or formulation in that, when it left the hands of the

Defendant manufacturers and/or suppliers, it was unreasonably dangerous, and it was more dangerous than an ordinary consumer would expect.

81. At all times herein mentioned, DARVOCET was in a defective condition and unsafe, and Defendant knew or had reason to know that said product was defective and unsafe, especially when used in the form and manner as provided by the Defendant.

82. Defendant knew, or should have known that at all times herein mentioned its DARVOCET was in a defective condition and was and is inherently dangerous and unsafe.

83. At the time of the Plaintiffs' and the Class' use of DARVOCET, DARVOCET was being used for the purposes and in a manner normally intended, namely for pain management.

84. Defendant with this knowledge voluntarily designed its DARVOCET in a dangerous condition for use by the public and by the Plaintiffs and the Class herein.

85. Defendant had a duty to create a product that was not unreasonably dangerous for its normal, intended use.

86. Defendant created a product unreasonably dangerous for its normal, intended use.

87. The prescription pain management medication, DARVOCET, designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendant was manufactured defectively in that DARVOCET left the hands of Defendant in a defective condition and was unreasonably dangerous to its intended users.

88. The prescription pain management medication, DARVOCET, designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendant reached its intended users in the same defective and unreasonably dangerous

condition in which the Defendant's drug DARVOCET was manufactured.

89. Defendant designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed a defective product which created an unreasonable risk to the health of consumers and to the Plaintiffs and the Class, and Defendant is therefore strictly liable for the injuries sustained by the Plaintiffs and the Class.

90. The Plaintiffs and the Class could not by the exercise of reasonable care, have discovered DARVOCET's defects herein mentioned and perceived its danger.

91. The prescription pain management medication, DARVOCET, designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendant was defective due to inadequate warnings or instructions as the Defendant knew or should have known that the product created a risk of serious and dangerous side effects including *inter alia* heart arrhythmias, myocardial infarction, other adverse cardiovascular events and/or sudden death, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences and the Defendant failed to adequately warn of said risks.

92. The prescription pain management medication, DARVOCET, designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendant was defective due to inadequate warnings and/or inadequate testing.

93. The prescription pain management medication, DARVOCET, designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendant was defective due to inadequate post-marketing surveillance and/or warnings because, after Defendant knew or should have known of the risks of serious side effects including *inter alia* **heart** arrhythmias, myocardial infarction, other adverse cardiovascular events and/or sudden

death, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences, and they failed to provide adequate warnings to users or consumers of the product, and continued to improperly advertise, market and/or promote its product, DARVOCET.

94. By reason of the foregoing, the Defendant became strictly liable in tort to the Plaintiffs and the Class for the manufacturing, marketing, promoting, distribution, and selling of a defective product, DARVOCET.

95. Defendant's defective design, manufacturing defect, and inadequate warnings of DARVOCET were acts that amount to willful, wanton, and/or reckless conduct by Defendant.

96. That said defects in Defendant's drug DARVOCET were a substantial factor in causing Plaintiffs’ and the Class’ injuries.

97. As a result of the foregoing acts and omissions, the Plaintiffs and the Class were and still are caused to suffer and/or are at a greatly increased risk of serious and dangerous side effects including *inter alia* heart arrhythmias, myocardial infarction, other adverse cardiovascular events and/or sudden death, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

98. As a direct and proximate result of the foregoing acts and omissions of the Defendant, the Plaintiffs and the Class suffered and will continue to suffer substantial and ascertainable injuries, incidental and related expenses, economic loss and other damages, in an amount to be determined at trial.

WHEREFORE, Plaintiffs, on behalf of themselves and the members of the Class, respectfully seek the relief set forth below.

## COUNT III
## BREACH OF EXPRESS WARRANTY

99. Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in the preceding paragraphs of this Complaint.

100. Plaintiffs bring this claim on behalf of themselves and all other persons who purchased, paid for and/or used DARVOCET.

101. Defendant expressly warranted that DARVOCET was safe and well accepted by users.

102. The prescription pain management medication DARVOCET does not conform to these express representations because DARVOCET is not safe and has numerous serious side effects, many of which were not accurately warned about by Defendant. As a direct and proximate result of the breach of said warranties, Plaintiffs and the Class suffered and/or will continue to suffer severe and permanent personal injuries, harm and economic loss.

103. Plaintiffs and the Class did rely on the express warranties of the Defendant herein.

104. Members of the medical community, including physicians and other healthcare professionals, relied upon the representations and warranties of the Defendant for use of DARVOCET as prescription pain medication in recommending, prescribing and/or dispensing DARVOCET.

105. The Defendant herein breached the aforesaid express warranties, as its drug DARVOCET was defective.

106. Defendant expressly represented to Plaintiffs and the Class, their physicians, healthcare providers, and/or the FDA that DARVOCET was safe and fit for use for the purposes intended, that it was of merchantable quality, that it did not produce any dangerous side effects in excess of those risks associated with other prescription pain management medications, that the side effects it did produce were accurately reflected in the warnings and that it was adequately tested and fit for its intended use.

107. Defendant knew or should have known that, in fact, said representations and warranties were false, misleading and untrue in that DARVOCET was not safe and fit for the use intended, and, in fact, produced serious injuries to the users that were not accurately identified and represented by Defendant.

108. As a result of the foregoing acts and/or omissions, the Plaintiffs and the Class, were and still are caused to suffer and/or is at a greatly increased risk of serious and dangerous side effects including *inter alia* heart arrhythmias, myocardial infarction, other adverse cardiovascular events and/or sudden death, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

109. Plaintiffs and the Class have sustained and will continue to sustain substantial and ascertainable injuries, incidental and related expenses, economic loss and other damages, in an amount to be determined at trial.

WHEREFORE, Plaintiffs, on behalf of themselves and the members of the Class, respectfully seek the relief set forth below.

## COUNT IV
## BREACH OF IMPLIED WARRANTIES

110. Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in the preceding paragraphs of this Complaint.

111. Plaintiffs bring this claim on behalf of themselves and all other persons who purchased, paid for and/or used DARVOCET.

112. At all times herein mentioned, the Defendant manufactured, compounded, portrayed, distributed, recommended, merchandized, advertised, promoted and sold DARVOCET for use as a prescription pain management medication.

113. At the time Defendant marketed, sold, and distributed DARVOCET for use by Plaintiffs and the Class, Defendant knew of the use for which DARVOCET was intended and impliedly warranted the product to be of merchantable quality and safe and fit for such use.

114. The Defendant impliedly represented and warranted to the users of DARVOCET and their physicians, healthcare providers, and/or the FDA that DARVOCET was safe and of merchantable quality and fit for the ordinary purpose for which said product was to be used.

115. That said representations and warranties aforementioned were false, misleading, and inaccurate in that DARVOCET was unsafe, unreasonably dangerous, improper, not of merchantable quality, and defective.

116. Plaintiffs and the Class, and/or members of the medical community and/or healthcare professionals did rely on said implied warranty of merchantability of fitness for a particular use and purpose.

117. Plaintiff and her physicians and healthcare professionals reasonably relied upon the skill and judgment of Defendant as to whether DARVOCET was of merchantable quality and safe and fit for its intended use.

118. The prescription pain management medication DARVOCET was placed into the stream of commerce by the Defendant in a defective, unsafe, and inherently dangerous condition and the product and accompanying materials were expected to and did reach users, handlers, and persons coming into contact with said products without substantial change in the condition in which they were sold.

119. The Defendant herein breached the aforesaid implied warranties, as its drug DARVOCET was not fit for its intended purposes and uses.

120. As a result of the foregoing acts and omissions, the Plaintiffs and the Class were and/or still are caused to suffer and/or are at a greatly increased risk of serious and dangerous side effects including *inter alia* heart arrhythmias, myocardial infarction, other adverse cardiovascular events and/or sudden death, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

121. Plaintiffs and the Class have sustained and will continue to sustain substantial and ascertainable injuries, incidental and related expenses, economic loss and other damages, in an amount to be determined at trial.

WHEREFORE, Plaintiffs, on behalf of themselves and the members of the Class, respectfully seek the relief set forth below.

## COUNT V
## FRAUDULENT MISREPRESENTATION

122. Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in the preceding paragraphs of this Complaint.

123. Plaintiffs bring this claim on behalf of themselves and all other persons who purchased, paid for and/or used DARVOCET.

124. The Defendant falsely and fraudulently represented to the medical and healthcare community, and to the Plaintiffs and the Class, and/or the FDA, and the public in general, that said product, DARVOCET, had been tested and was found to be safe and/or effective for prescription pain management.

125. The representations made by the Defendant were, in fact, false.

126. When said representations were made by the Defendant, it knew those representations to be false and it willfully, wantonly and recklessly disregarded whether the representations were true.

127. These representations were made by the Defendant with the intent of defrauding and deceiving the Plaintiffs and the Class, the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing the public in general, and the medical and healthcare community in particular, to recommend, prescribe, dispense and/or purchase said product, DARVOCET, for use as a means of prescription pain management, all of which evinced a callous, reckless, willful, depraved indifference to the health, safety and welfare of the Plaintiffs and the Class herein.

128. At the time the aforesaid representations were made by the Defendant and, at the time the Plaintiffs and the Class used DARVOCET, the Plaintiffs and the Class were unaware of the falsity of said representations and reasonably believed them to be true.

129. In reliance upon said representations, the Plaintiffs and the Class were induced to and did use DARVOCET, thereby sustaining severe and/or permanent personal injuries, and being at an increased risk of sustaining severe and permanent personal injuries, and risk of premature death.

130. Defendant knew and was aware or should have been aware that DARVOCET had not been sufficiently tested, was defective in nature, and/or that it lacked adequate and/or sufficient warnings.

131. Defendant knew or should have known that DARVOCET had a potential to, could, and would cause severe and grievous injury to the users of said product, and that it was inherently dangerous in a manner that exceeded any purported, inaccurate, and/or down-played warnings.

132. Defendant brought DARVOCET to the market, and acted fraudulently, wantonly and maliciously to the detriment of the Plaintiffs and the Class.

133. As a result of the foregoing acts and omissions, the Plaintiffs and the Class were and/or still are caused to suffer and/or are at a greatly increased risk of serious and dangerous side effects including *inter alia* heart arrhythmias, myocardial infarction, other adverse cardiovascular events and/or sudden death, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

134. Plaintiffs and the Class have sustained and will continue to sustain substantial and ascertainable injuries, incidental and related expenses, economic loss and other damages, in an amount to be determined at trial.

WHEREFORE, Plaintiffs, on behalf of themselves and the members of the Class, respectfully seek the relief set forth below.

## COUNT VI
## FRAUDULENT CONCEALMENT

135. Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in the preceding paragraphs of this Complaint.

136. Plaintiffs bring this claim on behalf of themselves and all other persons who purchased, paid for and/or used DARVOCET.

137. At all times during the course of dealing between Defendant and Plaintiffs and the Class, and/or Plaintiffs' and the Class' healthcare providers, and/or the FDA, Defendant misrepresented the safety of DARVOCET for its intended use.

138. At all times during the course of dealing between Defendant and Plaintiffs and the Class, and/or Plaintiffs' and the Class' healthcare providers, and/or the FDA, Defendant misrepresented the risk of cardiotoxicity caused by DARVOCET.

139. Defendant knew or was reckless in not knowing that its representations were false.

140. In representations to the Plaintiffs and the Class, and/or Plaintiffs' and the Class' healthcare providers, and/or the FDA, Defendant fraudulently concealed and intentionally omitted the following material information:

a. that DARVOCET was not as safe as other forms of pain management;

b. that the risks of adverse events with DARVOCET were higher than those with other prescription pain management medications;

c. that the risks of adverse events with DARVOCET were not adequately tested and/or known by the Defendant;

d. that Defendant was aware of dangers in DARVOCET, in addition to and above and beyond those associated with other prescription pain management medications;

e. that DARVOCET was defective, and that it caused dangerous side effects, including but not limited to higher incidence of heart arrhythmias, myocardial infarction, other adverse cardiovascular events and/or sudden death, in a much more and significant rate than other prescription pain management medications;

f. that patients needed to be monitored more regularly than normal while using DARVOCET;

g. that DARVOCET was manufactured negligently;

h. that DARVOCET was manufactured defectively;

i. that DARVOCET was manufactured improperly;

j. that DARVOCET was designed negligently;

k. that DARVOCET was designed defectively; and

l. that DARVOCET was designed improperly.

141. Defendant was under a duty to disclose to Plaintiffs and the Class, and their physicians, hospitals, healthcare providers, and/or the FDA the defective nature of DARVOCET, including but not limited to the heightened risks of an adverse cardiovascular event, such as a heart arrhythmia, myocardial infarction or sudden death.

142. Defendant had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous side effects, and hence, cause damage to persons who used DARVOCET, including the Plaintiffs and the Class herein.

143. Defendant's concealment and omissions of material facts concerning *inter alia* the safety of DARVOCET was made purposefully, willfully, wantonly, and/or recklessly, to mislead Plaintiffs and the Class, and their physicians, hospitals and healthcare providers into reliance and continued use of DARVOCET, and actions thereon, and to cause them to purchase, prescribe, and/or dispense DARVOCET and/or use the product.

144. Defendant knew that Plaintiffs and the Class, and their physicians, hospitals, healthcare providers, and/or the FDA had no way to determine the truth behind Defendant's concealment and omissions, and that these included material omissions of facts surrounding DARVOCET, as set forth herein.

145. Plaintiffs and the Class, as well as her physicians, healthcare providers, and/or hospitals reasonably relied on facts which negligently, fraudulently and/or purposefully did not include facts that were concealed and/or omitted by the Defendant.

146. As a result of the foregoing acts and omissions, the Plaintiffs and the Class were and/or still are caused to suffer and/or are at a greatly increased risk of serious and dangerous side effects including *inter alia* heart arrhythmias, myocardial infarction, other adverse cardiovascular events and/or sudden death, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished

enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

147. Plaintiffs and the Class have sustained and will continue to sustain substantial and ascertainable injuries, incidental and related expenses, economic loss and other damages, in an amount to be determined at trial.

WHEREFORE, Plaintiffs, on behalf of themselves and the members of the Class, respectfully seek the relief set forth below.

## COUNT VII
## NEGLIGENT MISREPRESENTATION

148. Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in the preceding paragraphs of this Complaint.

149. Plaintiffs bring this claim on behalf of themselves and all other persons who purchased, paid for and/or used DARVOCET.

150. Defendant had a duty to represent to the medical and healthcare community, and to the Plaintiffs and the Class, the FDA and the public in general that said product, DARVOCET, had been tested and found to be safe and effective for prescription pain management.

151. The representations made by the Defendant were, in fact, false.

152. Defendant failed to exercise ordinary care in the representation of DARVOCET, while involved in its manufacture, sale, testing, quality assurance, quality control, and/or distribution of said product into interstate commerce in that Defendant negligently misrepresented DARVOCET's high risk of unreasonable and dangerous side effects.

153. Defendant breached its duty in representing DARVOCET's serious side effects to the medical and healthcare community, to the Plaintiffs and the Class, the FDA and the public in general.

154. As a result of the negligent misrepresentations of the Defendant set forth above, said Defendant knew and was aware or should have known that DARVOCET bad been insufficiently tested, and/or had not been tested, that it lacked adequate and/or accurate warnings and/or that it created a high risk and/or higher than acceptable risk, and/or higher than reported/represented risks, as well as unreasonable, dangerous side effects, including *inter alia* heart arrhythmias, myocardial infarction, other adverse cardiovascular events and/or sudden death, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

155. Plaintiffs and the Class have sustained and will continue to sustain substantial and ascertainable injuries, incidental and related expenses, economic loss and other damages, in an amount to be determined at trial.

WHEREFORE, Plaintiffs, on behalf of themselves and the members of the Class, respectfully seek the relief set forth below.

## COUNT VIII
## FRAUD AND DECEIT

156. Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in the preceding paragraphs of this Complaint.

157. Plaintiffs bring this claim on behalf of themselves and all other persons who purchased, paid for and/or used DARVOCET.

158. Defendant conducted research and/or had a duty to conduct research using DARVOCET as part of its research.

159. As a result of Defendant's research and testing, or lack thereof, Defendant blatantly and intentionally distributed false information, including but not limited to assuring the public, the Plaintiffs and the Class, their doctors, hospitals, healthcare professionals, and/or the FDA that DARVOCET was safe and effective for use as a means of pain management.

160. As a result of Defendant's research and testing, or lack thereof, Defendant intentionally omitted certain results of testing and research to the public, healthcare professionals. and/or the FDA, including the Plaintiffs and the Class.

161. Defendant had a duty when disseminating information to the public to disseminate truthful information and a parallel duty not to deceive the public and the Plaintiffs and the Class, as well as their respective healthcare providers and/or the FDA.

162. The information distributed to the public, the FDA, the Plaintiffs and the Class by the Defendant, including but not limited to reports, press releases, advertising campaigns, television commercials, print ads, magazine ads, billboards, and/or all other commercial media contained material representations of fact and/or omissions.

163. The information distributed to the public, the FDA, the Plaintiffs and the Class by the Defendant intentionally included representations that Defendant's drug DARVOCET was safe and effective for use as a prescription pain management medication.

164. The information distributed to the public, the FDA, the Plaintiffs and the Class by the Defendant intentionally included representations that Defendant's drug DARVOCET carried the same risks, hazards, and/or dangers as other prescription pain management medications.

165. The information distributed to the public, the FDA, the Plaintiffs and the Class by the Defendant intentionally included representations that Defendant's drug DARVOCET was more effective for pain management, thereby encouraging the use of DARVOCET in circumstances other than those in which the drug has been approved, over-promises the benefits and minimizes the risk associated with DARVOCET.

166. The information distributed to the public, the FDA, the Plaintiffs and the Class by the Defendant intentionally included false representations that DARVOCET was not injurious to the health and/or safety of its intended users.

167. The information distributed to the public, the FDA, the Plaintiff and the Class by the Defendant intentionally included false representations that DARVOCET was as potentially injurious to the health and/or safety of its intended users as other prescription pain management medications.

168. These representations were all false and misleading.

169. Upon information and belief, Defendant intentionally suppressed, ignored and disregarded test results not favorable to the Defendant, and results that demonstrated that DARVOCET was not safe as a means of pain management and/or was not as safe as other means of pain management, including but not limited to other forms of prescription pain management medications.

170. Defendant intentionally made material representations to the FDA and the public, including the medical profession, and the Plaintiffs and the Class regarding the safety of DARVOCET, specifically but not limited to DARVOCET not having dangerous and serious health and/or safety concerns.

171. Defendant intentionally made material representations to the FDA and the public in general, including the medical profession and the Plaintiffs and the Class regarding the safety

of DARVOCET, specifically but not limited to DARVOCET being as safe a means of pain management as other prescription pain management medications.

172. That it was the purpose of the Defendant in making these representations to deceive and defraud the public, the FDA, and/or the Plaintiffs and the Class, to gain the confidence of the public, healthcare professionals, the FDA, and/or the Plaintiffs and the Class, to falsely ensure the quality and fitness for use of DARVOCET and induce the public, and/or the Plaintiffs and the Class to purchase, request, dispense, prescribe, recommend, and/or continue to use DARVOCET.

173. Defendant made the aforementioned false claims and false representations with the intent of convincing the public, healthcare professionals, the FDA, and/or the Plaintiffs and the Class that DARVOCET was fit and safe for use as a prescription pain management medication.

174. Defendant made the aforementioned false claims and false representations with the intent of convincing the public, healthcare professionals, the FDA, and/or the Plaintiffs and the Class that DARVOCET was fit and safe for use as pain management and did not pose risks, dangers, or hazards above and beyond those identified and/or associated with other prescription pain management medications.

175. That Defendant made claims and representations in its documents submitted to the FDA, to the public, to healthcare professionals, and the Plaintiffs and the Class that DARVQCET did not present serious health and/or safety risks.

176. That Defendant made claims and representations in its documents submitted to the FDA, to the public, to healthcare professionals, and the Plaintiffs and the Class that DARVOCET did not present health and/or safety risks greater than other prescription pain management medications.

177. That these representations and other claims by the Defendant were false when made, and/or were made with a pretense of actual knowledge when knowledge did not actually exist, and/or were made recklessly and without regard to the actual facts.

178. That these representations and others, made by Defendant, were made with the intention of deceiving and defrauding the Plaintiffs and the Class, including their respective healthcare professionals and/or the FDA, and were made in order to induce the Plaintiffs and the Class and/or their respective healthcare professionals to rely upon misrepresentations and caused said persons and entities to purchase, use, rely on, request, dispense, recommend, and/or prescribe DARVOCET.

179. That Defendant, recklessly and intentionally falsely represented the dangerous and serious health and/or safety concerns of DARVOCET to the public at large, the Plaintiffs and the Class for the purpose of influencing the marketing of a product known to be dangerous and defective and/or not as safe as other alternatives, including other prescription pain management medications.

180. That Defendant willfully and intentionally failed to disclose the material facts regarding the dangerous and serious safety concerns of DARVOCET by concealing and suppressing material facts regarding the dangerous and serious health and/or safety concerns of DARVOCET.

181. That Defendant willfully and intentionally failed to disclose the truth, failed to disclose material facts and made false representations with the purpose and design of deceiving and lulling the Plaintiffs and the Class, as well as their respective healthcare professionals into a sense of security so that Plaintiffs and the Class would rely on the representations and purchase, use and rely on DARVOCET and/or that their respective healthcare providers would dispense, prescribe, and/or recommend the same.

182. Defendant, through its public relations efforts, which included but were not limited to the public statements and press releases, knew or should have known that the public, including the Plaintiffs and the Class, as well as their respective healthcare professionals would rely upon the information being disseminated.

183. Defendant utilized consumer adverting to market, promote, and/or advertise DARVOCET.

184. That the Plaintiffs and the Class and/or their respective healthcare professionals did in fact rely on and believe the Defendant's representations to be true at the time they were made and relied upon the representations as well as the superior knowledge of pain management and were thereby induced to purchase, use and rely on Defendant's drug DARVOCET.

185. That at the time the representations were made, the Plaintiffs and the Class and/or their respective healthcare providers did not know the truth with regard to the dangerous and serious health and/or safety concerns of DARVOCET.

186. That the Plaintiffs and the Class did not discover the true facts with respect to the dangerous and serious health and/or safety concerns, and the false representations of the Defendant, nor could the Plaintiffs and the Class with reasonable diligence have discovered the true facts.

187. That had the Plaintiffs and the Class known the true facts with respect to the dangerous and serious health and/or safety concerns of DARVOCET, Plaintiffs and the Class would not have purchased, used and/or relied on Defendant's drug DARVOCET.

188. That the Defendant's aforementioned conduct constitutes fraud and deceit, and was committed and/or perpetrated willfully, wantonly and/or purposefully on the Plaintiffs and the Class.

189. As a result of the foregoing acts and omissions, the Plaintiffs and the Class were and/or still are caused to suffer and/or are at a greatly increased risk of serious and dangerous side effects including *inter alia* heart arrhythmias, myocardial infarction, other adverse cardiovascular events and/or sudden death, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

190. Plaintiffs and the Class have sustained and will continue to sustain substantial and ascertainable injuries, incidental and related expenses, economic loss and other damages, in an amount to be determined at trial.

WHEREFORE, Plaintiffs, on behalf of themselves and the members of the Class, respectfully seek the relief set forth below.

**COUNT IX**

**UNJUST ENRICHMENT**

191. Plaintiffs incorporate by reference the allegations of all foregoing paragraphs as if such had been set forth in full herein. This claim is pleaded in the alternative to the breach of warranty claims.

192. Plaintiffs bring this claim on behalf of themselves and all other persons who purchased, paid for and/or used DARVOCET.

193. Plaintiffs and the Class conferred a tangible economic benefit upon the Defendant by purchasing the defective drug DARVOCET. Plaintiffs and the Class would have expected remuneration from the Defendant at the time this benefit was conferred had they known that DARVOCET was defective.

194. Failing to require the Defendant to provide remuneration under these circumstances would result in them being unjustly enriched at the expense of Plaintiffs and the Class.

195. Defendant was and continues to be unjustly enriched at the expense of Plaintiffs and the Class. Defendant's retention (without an offsetting return payment) of the benefit conferred upon them by Plaintiffs and the Class would be unjust and inequitable.

WHEREFORE, Plaintiffs, on behalf of themselves and the members of the Class, respectfully seek the relief set forth below.

## COUNT X
## PUNITIVE CONDUCT

196. Defendant has fraudulently and knowingly misrepresented and concealed the truth with regard to the dangerous and serious health and/or safety concerns of DARVOCET by causing serious and dangerous side effects including *inter alia* heart arrhythmias, myocardial infarction, other adverse cardiovascular events and/or sudden death, as well as other severe and personal injuries which are permanent and lasting in nature. Defendant knowingly concealed this information in order to be able to continue to sell their defective drug product DARVOCET.

197. Defendant's conduct was knowing, intentional, with malice, demonstrated a complete lack of care and was in reckless disregard for the rights of the Plaintiffs and the Class. Defendant's conduct has been outrageous and outside the bounds of decency. Defendant should be punished due to its conduct of putting others at risk of serious injury and/or death in order to make more profit. Plaintiffs hereby request an award of punitive damages to appropriately punish the Defendant for its extreme misconduct.

WHEREFORE, Plaintiffs, on behalf of themselves and the members of the Class, respectfully seek the relief set forth below.

## COUNT XI
## EQUITABLE RELIEF

198. Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in the preceding paragraphs of this Complaint.

199. Plaintiffs are without adequate remedy at law, rendering injunctive and other equitable relief appropriate.

200. Plaintiffs will suffer irreparable harm if the Court does not declare DARVOCET to be unsafe, potentially harmful, and dangerous to Plaintiffs and the Class and the consuming public in general, and order Defendants to cease and desist their fraudulent and dangerous advertising, marketing and sale of the subject drugs.

WHEREFORE, Plaintiffs, on behalf of themselves and the members of the Class, respectfully seek the relief set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, **VERONICA CEJA** and **DANIEL GARZA II**, individually and on behalf of all others similarly situated, respectfully request that this Court:

A. determine that the claims alleged herein may be maintained as a class action and issue an order certifying the Class as defined above;

B. appoint Plaintiffs as the representatives of the Class and certifying the Plaintiffs' Class defined herein;

C. appoint Ribbeck Law Chartered as co-lead Class counsel;

D. award all actual, general, special, incidental, statutory, treble and consequential damages to which Plaintiffs and Class members are entitled;

E. award pre-judgment and post-judgment interest on such monetary relief;

F. order Defendant to pay punitive damages to appropriately punish Defendant for its extreme misconduct;

G. appoint a trustee to administer any funds recovered from this suit;

H. appoint attorneys for the trustee;

I. award Plaintiffs and the Class other appropriate equitable relief, including, but not limited to, disgorgement of all profits obtained from Defendant's wrongful conduct and declaratory and injunctive relief;

J. award Plaintiffs and the Class their costs and expenses in this litigation, including expert fees, and reasonable attorneys' fees; and

K. grant Plaintiffs and the Class such other and further relief that this Court deems just and proper under the circumstances.

## JURY DEMAND

Plaintiffs demand a jury trial on all issues so triable.

Dated: January 20, 2011

Respectfully submitted,

**RIBBECK LAW CHARTERED**

**By: /s/ Monica R. Kelly**
**Attorney for Plaintiffs**

**Manuel von Ribbeck, Esq.**
**Monica R. Kelly, Esq.**
**RIBBECK LAW CHARTERERD**
505 N. Lake Shore Drive, Suite 102
Lake Point Tower
Chicago, Illinois, 60611
Phone (312) 822-9999
E-mail: manuelribbeck@ribbecklaw.com
E-mail: monicakelly@ribbecklaw.com
E-mail: mervinmateo@ribbecklaw.com
E-mail: fernandotorres@ribbecklaw.com

Firm I.D. No. 42698